5 years ago, in PDR Network, four justices recognized that, properly construed, the Hobbs Act does not require district courts to treat agency orders that interpret federal statutes as binding precedent. Instead, it operates, just like other pre-enforcement channeling statutes, by providing for district courts to interpret federal statutes as binding precedent. In fact, the Hobbs Act does not require district courts to interpret federal statutes as binding precedent. Instead, it requires a direct review of agency orders in the Courts of Appeals. McKesson and the government reject this view. Together, they urge an interpretation that would bind courts, including this one, to agency interpretations of federal statutes no matter how wrong. And that would be true even for interpretive rules that, by definition, do not carry the force of law, transforming even the most informal agency interpretations into permanently binding ones. But none of the relevant markers—text, context, structure, and history—support such a misguided and possibly unconstitutional reading of the Hobbs Act. The key phrase, determine the validity of, authorizes Courts of Appeals to determine whether an order is legally in effect. And a court does this by issuing a declaratory judgment that the order is valid or invalid. Context cinches this. The phrase is immediately surrounded by terms which all denote specific forms of equitable relief directed against the order itself. The phrase, determine the validity of, should therefore be read the same way. The Act's broader structure reinforces this understanding. From beginning to end, it establishes procedures designed to govern direct review proceedings, and elsewhere uses the phrase, determine the validity of, to mean a declaratory judgment. And finally, there's history. The Act was never intended to implicate actions between private parties. Instead, it was patterned on similar statutes established for the review of orders from other agencies that have never been thought to bind district courts. Consistent with the longstanding recognition that interpreting statutes is a job for the judiciary, this Court should construe the Hobbs Act for what it is—a commonplace jurisdictional provision that allows parties to obtain equitable relief directly against agency orders in the Courts of Appeals. I welcome the Court's questions. What would you do with the Port of Boston case? I think the Port of Boston case is different for a couple of reasons, Justice Thomas. But most importantly, in that case, both parties that were involved in the district court were also involved in the regulatory proceeding seeking a petition for review. And I think in that scenario, where you've got two parties that are specifically bound by an agency action, you've got normal estoppel principles, issue preclusion principles that would apply. But we're not really talking about a situation— I think the difference, Your Honor, in that case, compared with what we have here, is you've got a situation where the parties that are fighting about the meaning of the agency interpretation were also parties in the agency proceeding itself. Here, you don't have a situation where, you know, the plaintiffs in this case had any role to play or had any— But they could have. You haven't denied they had an opportunity. Well, we don't deny that in theory they had an opportunity. No, not in theory. This is an unusual case where the proceeding was actually in effect during the litigation. In my experience, and I think we've said this, if there is something like that happening, the court below should stay, letting that decision become final. I think, Your Honor, that illustrates what kind of empty promise my friends on the other side's interpretation would have for the Hobbs Act, because you're right. What happened here was the litigation was proceeding for six years, and the agency then issued this AmeriFactors order. If, in fact, what was supposed to happen at that point was the parties in the underlying litigation were required to go and seek some sort of relief in front of either the agency or a petition for review, we are six years on from that point in time from happening, and the agency hasn't actually resolved what one party had actually done in that case, which was to file for a reconsideration. And so I think as the concurrences in PDR Network pointed out, that kind of circuitous route to judicial review doesn't really make very much sense, either if you look at the terms of the Hobbs Act text itself or in practical sense. If, in fact, it's the case that a party could seek judicial review in some way, why not allow district courts to provide that review in a case in which arises organically from just a claim that the statute is violated? What do I do with the dictionary definition of validity? Valid means things like lawful, meritorious, or correct. No dictionary suggests that you only need a declaratory judgment for that. We have Heck v. Humphrey, where the court said that you cannot bring a wrongful conviction claim under 1983 because doing so would amount to a collateral challenge to the conviction's validity. 1983 only requires money damages, and yet we use validity in a very different sense because nothing in the 1983 was going to vacate the conviction. So there are multiple ways to challenge validity without a declaration. Well, I agree with that, Justice Sotomayor, but I think that the phrase determine the validity helps provide, I think, clarity for what that term means in the context of 2342. It isn't just that a court is opining on the validity in a colloquial sense of the legitimacy or reasoning of the order. It's that it's finally resolving whether that order is valid or invalid. It was the same language in Yackas, and yet determine the validity. And in Yackas, we said it was exclusive. I know you rely on the Second Circuit, but if you look at the analysis, it barely mentions the second sentence. Boy, my tongue got tied.  What it did was focus in on that language, determine the validity. Well, I respectfully disagree with how much it relied on the first sentence or the second sentence. I think it said those two sentences together lead to the conclusion that we reach in that case. And, you know, the key language there is the — But we made that finding, and Congress, a few years later, uses exactly the same language, determine the validity, in this statute, the Hobbs Act. It does, but it doesn't use what I think is, in fact, the key language of the second sentence, which is not determine the validity, but consider the validity. And I think there's also another distinction, at least as a textual matter, between the language of the Emergency Price Control Act that was at issue in Yackas and here, which is if you look at where that language, determine the validity, is in the Emergency Price Control Act, it doesn't come — it's not included in a series of other terms that denote specific forms of equitable relief. And so, yes, the phrase determine the validity of is the same between the two statutes, but the context is different. I don't understand. When you have a sentence that doesn't say and, it says or. The equitable relief is set forth at first. It says has exclusive jurisdiction to enjoin. That's equitable. Set aside, equitable. Suspend and hold in part. And it doesn't use the word and or, and determine the validity of. It says or to determine the validity of. That's broader. That's intended to be broader. Well, I respectfully would disagree with that. I think it's different and distinct, but not necessarily broader. What I think is notable about the way that that sentence is structured is you have the first three terms, enjoin, set aside, and suspend, all referring to some form of injunctive or coercive relief. The next phrase, determine the validity of, refers to something entirely different, albeit a form of equitable relief, but a declaratory judgment. Well, as I mentioned, or determine the validity of can be done in a variety of different ways. It doesn't require just a declaratory judgment. I think in the abstract, validity might lead a reader to think that that could be true. But I think right in context, what's going on in this provision, both with respect to the use of the term determine, but also that it's appearing in a list of other forms of equitable relief, that what the statute is trying to do is it's trying to provide something of an instruction manual for parties who are planning to seek direct review of an agency action. And it's saying for that kind of petition or proceeding, where you actually want the agency order to be enjoined in some way or declared invalid, you can do that by filing your petition within 60 days in a court of appeals. But what it is not trying to do is forever bind courts in any garden variety, run-of-the-mill enforcement. It does seem to me that the word exclusive has a lot of power otherwise. Why do you say that it forever binds? I guess if we have this mechanism in the Hobbs Act for people to challenge the agency order, I don't understand why you're saying the agency's order forever binds. Well, I mean, you can take this case. The minute the agency issued this AmeriFactors order, the district court in this case said, I have no license to review whether the agency's interpretation of the TCPA is correct or not. Right, until the court of appeals hears that question per the statute. Well, of course, in this case it may never hear that question. It may not, but there is a mechanism for it to be corrected. I mean, the suggestion that the agency issues an order and the courts are suddenly divested of any opportunity to address its validity, I think is inconsistent with the very provision we're talking about here, which allows for the courts of appeals to assess the validity. At a minimum, you agree that the courts of appeals can do that, right? Yes, with a maybe friendly amendment, which is not assess the validity, but to determine the validity once and for all. And I do think there's an important distinction. No, I understand how your argument plays out. But I guess what I'm just saying is, it seems to me that we're just talking about a period of time in which the district court is hearing an enforcement action or whatnot, and the agency issues an order. And given the Hobbs Act, until the court of appeals determines the validity, the district court has to assume for the purpose of any litigation that it's before it, that it is a valid order. I think we are using the terms determine the validity in different ways. I think what the Hobbs Act says and what it requires is that if you are seeking a petition for review to enjoin or actually declare invalid once and for all this agency action, then yes, you must bring that petition within 60 days in a court of appeals. But if what you want is just a district court to... Not apply this order in the context of the litigation before it.  I appreciate that distinction. I understand it. What I'm suggesting is just the ultimate conclusion on your part, or at least you said it at the beginning, that this somehow means that the courts never have a chance to get out from under the agency order, that the agency order will bind the courts forever, perhaps permanently, you say. And I guess I just don't understand that. Well, I mean, I think it comes up in a number of different contexts. But you could take, for instance, a set of consumers who would have no reason to ever think that an agency interpretation of the TCPA would matter to them. So the FCC could issue this a mere factor. Why wouldn't they? If we say that when an agency issues an order, unless and until the court of appeals determines its validity, all litigation that is ongoing related to that order is going to treat it as valid. Correct. Maybe I was unclear. My hypothetical was just imagine there is no case. The AmeriFactors order is issued. A party only has 60 days to file a petition for review under the Hobbs Act. So in three years down the road, if some consumers believe that a company has violated the TCPA, they are not capable or permitted to bring a petition for review under the Hobbs Act. There's no equitable... No. This is a bar. And in that scenario, Your Honor, a district court under my friend's interpretation of this provision would have no choice but to enforce the agency's interpretation of the TCPA. Can I take you back, Mr. Wessler, to Justice Thomas' initial question about the Port case and about Venner and ask you to tell me what your reply brief means with respect to those cases? Because what you say in your reply brief is that those cases stand for a kind of anti-circumvention principle that we're not going to allow people to evade the Hobbs Act. And you say what those cases do is they shut down collateral challenges that could have been brought under the Hobbs Act. So what do you mean by that? What do you take the scope of those cases to be, or said otherwise, what do you take the set of collateral challenges to be that those cases preclude? Sure. I think there are maybe two kind of categories, the way to think about it. The first would be in a case in which the actual parties who are in the civil proceeding were also parties to an agency action. That's not Port of Boston, right? Well, that is Port of Boston. In Port of Boston, both parties that were the subject of the district court proceeding were also parties in the agency action that was taking place kind of simultaneously. And so in that scenario, I think it is fair to say, well, an order from the district court would effectively enjoin the agency action in a way that would suspend the functioning of the order and would be subject to the Hobbs Act. But I don't think in any of those old cases, Venner, Port of Boston. You said that there were two things? I think the other category would be a case in which you might have one party who is specifically given a waiver by an agency. And I think in a scenario like that, if it later got sued and the only agency action related to that specific party, the effect of a later suit might be to suspend the agency order in a way that would look like the kinds of equitable relief that the Hobbs Act covers. But once you're out of those two pretty narrow categories, and certainly that isn't the case we've got here or what we had in PDR Network, it cannot be the case, I think, or would submit to the court, that the Hobbs Act covers any proceeding that arises in the normal course of a district court's jurisdiction in which the district court is being asked to evaluate or interpret the meaning of a statute and compare the agency. I understand that position, but I guess I'm wondering why you've argued this case quite so broadly. I mean, it seems to me that you win this case so long as you say there's at least a requirement that the parties bringing the suit are legally bound, and that's not met here, and so we win on that ground. Why go further than that? Well, I mean, I will take a reversal win in whatever way the court thinks is best, but I do think that there is something quite odd about an interpretation that the other side has offered for 2342 that would extend to cover a district court's ability to interpret the statute, and I think that really is what we're talking about in this case. I think it's even more extreme when you look at the nature of the AmeriFactors order here, which all parties argued and agreed below was an interpretive order. Right. I mean, I guess that's exactly what I'm suggesting. I mean, I think that in our initial opinion in, remind me of the name? PDR. PDR, right, that the majority opinion basically says, you know, I think it's important to us, the majority opinion says, whether this is an interpretive rule, and here it seems to me you can just come up and say this is an interpretive rule. The majority in PDR got it right that that was an important question, and if it's an interpretive rule, you know, it falls outside the Hobbs Act. Correct. End of case. Correct, and we would accept a decision going no further than that. I do think that it is hard to square the McKesson and the government's interpretation of 2342 as expansively as they have argued it to mean any time a district court is asked to assess the meaning of a statute, if the agency has taken a position on that already, it is barred from doing that, and I don't think that the language of 2342 or the structure of the Hobbs Act could be read to sustain that kind of understanding. What about its purposes? How do you square your point with its purposes? Sure. I mean, I don't think there's any indication, if you look back in the sort of transformation from the Urgent Deficiency Act to the Hobbs Act, what Congress was trying to do to suggest that they were, that the design and goal of this statute was to do that kind of complete removal of the ability of courts to assess. I mean, wasn't it trying to establish finality, predictability, uniformity? When the Court of Appeals rules on the validity or does the statutory interpretation you're talking about, we then have a sort of definitive interpretation that applies at least to a particular region. It seems to me that to say that the court or that the Congress was still trying to preserve the district court's ability to make, you know, essentially ad hoc determinations within the context of each of its cases flies in the face of the idea that they were channeling exclusive jurisdiction to determine the validity of the agency's interpretation in the Court of Appeals. Yes, but we may just disagree on what determine the validity in this context means because I agree with everything you just said, but I think it is tailored to a specific kind of remedy for parties who are adversely affected by agency coercion. But why does the remedy matter? If you accept, if you agree with my premise that what Congress was trying to do was get a rule out there that is being consistently applied, then it really doesn't relate to the remedy. It relates to the merits of the party's claim that this is a valid or invalid interpretation, and it wanted the Court of Appeals to make that decision. I disagree with that. I think what Congress wanted to do was to create a streamlined process for obtaining quick review of agency actions that would either uphold them throughout or strike them down and invalidate them. But what it was not trying to do, and we know this, I think, for a couple of reasons, was to extend the Hobbs Act's coverage further to foreclose district courts in the mine run case from even evaluating whether the agency's interpretation of the statute is correct. And we know that, I think, for a couple of, I think, indicia. One, you know, it had, Congress had, as we discussed earlier, had Yakis and the Emergency Price Control Act out there when it was enacting the Hobbs Act, and it did not integrate into the Hobbs Act the key second sentence of that statute, which had been interpreted along with the first sentence to have this result. But I think just as significantly, we know, and the concurrences in PDR Network pointed this out, we know that Congress knows how to accomplish, I think, what Your Honor is suggesting, which is to eliminate the ability of district courts to provide any judicial review in an enforcement proceeding over an agency interpretation of a statute. We see that in the environmental statutes. There are three or four of them. And, you know, that language, which I think is quite clear, provides a kind of negative prescription that district courts do not have the authority to provide any sort of judicial review in an enforcement proceeding, just as absent from the Hobbs Act here. And I think that's a quite significant distinction. And one, I think that we have to, again, as we know from PDR Network, recognize that, you know, the silence that the Hobbs Act has when it comes to that kind of question, I think, ought to be significant in the way we understand the background rule that's operating here, which is for, you know, claims that don't fall within one of these channeling statutes, a district court is always free in that context to assess the, you know, reasoning of an agency's interpretation and interpret the statute itself. And I think the Hobbs Act, because it didn't foreclose that kind of judicial review that we see from other statutes, means that district courts must remain free to be able to do that in a case like this one or like in what we have in PDR Network. Mr. Wessler, I'm struggling a little bit with the off-ramp you were discussing with Justice Kagan. And as I understand it, the idea goes that the Hobbs Act doesn't even apply at all because the AmeriFactors order wasn't really an order. It was an interpretive rule. But it was an adjudication, and there was a final order issued in that administrative adjudication. That would seem to be, to me, every day of the week and twice on Sundays an order and therefore implicate the Hobbs Act and raise unavoidably the larger question in this case. What am I missing? Yeah, I don't think we disagree with any of that, and I don't think our view is that this isn't an order. I think just, you know, the other side has said, well, it's an adjudication, and so somehow that doesn't implicate whether there's an interpretive or legislative rule. I know what an interpretive rule looks like, and it doesn't look like an administrative agency order to parties in an adjudication. At least that's what I had always understood, but maybe I'm missing something. Right, although what we have in this order, it is an adjudicatory order. What we have in this order is an agency simply advising the public of its view of the meaning of a specific phrase in the TCPA. And so I do think— And you don't understand that as binding on you, correct? Correct. Oh, it's not binding on you, but it's binding, isn't it? Well, we wouldn't say it's binding. It's just a piece of paper in the world? Yes, it would be like an informal guidance offering a view of a statute. We don't think that there actually carries any binding significance. And so I think you're asking about an off-ramp. I do think that in that way, you know, what a district court in a garden-variety, you know, civil case could do is it could simply ignore the order. That's not how the Court of Appeals understood it. Certainly not. Certainly not. But we think that that—if that were—if, in fact, the Court wanted to, I think, move in this direction, it wouldn't be determining the validity of anything because the order is non-binding by nature because it's interpretive. Now, the Ninth Circuit, you know, is the only circuit that we're aware of that has adopted an understanding of Hobbs Act that renders the classification between interpretive and legislative rules irrelevant. In the Ninth Circuit, it is—it does not matter. Any order that is subject to the Hobbs Act immediately withdraws jurisdiction from the district court to do anything. And I think—I would submit to the Court that that just cannot be right because it does mean that even non-binding informal guidance is capable of binding district court. Counsel, the problem I'm having with your interpretation is I don't even know why they gave jurisdiction to the agency at all to do anything, meaning Justice Kavanaugh expressed a concern that if a defendant could not challenge an agency's order in an enforcement proceeding, that might be unfair or even raise due process concerns. But your interpretation means that if a regulated party seeks an agency order to determine whether its conduct is permissible, it asks the agency for that, it relies on that order to send the e-faxes, and it's still liable for triple damages to any plaintiff who wants to come in and say, even though I had an opportunity to challenge this interpretation before the agency, I didn't have to bother. I could just wait and sue anyone who followed the agency's order, correct? Well, a couple of— That's the downside. A couple of responses to that. I mean, first, I do not think that a defendant would necessarily be on the hook in that scenario for triple damages because that does—the triple damages provision of the TCPA requires—there is a built-in reasonable reliance— But it still would be liable. But I do think you're not wrong to suggest that there might be some reliance interests at stake here. I do not think those can overcome what the text of this statute means. I also think— Unless we believe that the act, by giving an out to people who didn't have an adequate opportunity for review, that's the out. Well, I don't think that— It was that it intended to make these orders final unless overturned by the court of appeals. May I answer? With respect, I do not think adequacy is a sufficient safety valve, and I think that's true for at least two reasons. The first, Your Honor, is that, you know, this Court has never taken a position on what adequacy in the APA means. I do not think that the point of a jurisdictional statute would be to invest district courts in all of these cases from assessing the specific circumstances of when individual parties in their case may or may not have known about a particular order that would have given rise to a Hobbs Act claim. And I also think it begs the question, exclusive jurisdiction to do what? Which, in this case, we would submit the Hobbs Act only requires for petitions that are directly challenging agency actions. Thank you, Counsel. Justice Thomas? Justice Alito? Anything further? Justice O'Neill? No. Justice Kavanaugh? No. Justice Jackson? Okay. Thank you, Counsel. Thank you. Mr. Palmore? Thank you, Mr. Chief Justice, and may it please the Court. The Hobbs Act's text, history, precedent, and purpose all support the conclusion that a lower court here could not impose liability on McKesson for engaging in conduct that the SEC said did not violate the TCPA, where plaintiff concedes it had adequate opportunity for judicial review under the Hobbs Act. The statutory text and structure show that a Hobbs Act court's exclusive jurisdiction to determine the validity of an order means it alone can evaluate whether the order is correct. If Congress had wanted to limit this exclusivity to declaratory judgments, it would have done so expressly. Instead, Sections 2349 and 2342 together show that the Hobbs Act court has exclusive jurisdiction not just over remedies against the order, but also over evaluation of its merits. And that is exactly how this Court interpreted predecessor statutes, whose terms and precedent Congress incorporated into the Hobbs Act. Under both the Urgent Deficiencies Act and the Emergency Price Control Act, this Court construed those statutes to bar collateral review in enforcement and private party disputes, even when no declaratory judgment or other relief was sought against the order. And consistent with that precedent, Justice Thomas, the Court in Port of Boston interpreted the Hobbs Act's exclusive jurisdiction to mean, quote, review the merits. And on that understanding, it barred redetermination of the same issue decided by an agency in a private payment dispute, again, where no declaratory judgment or relief against the order was sought and whether or not the party participated before the agency. Finally, the Hobbs Act's purpose of establishing finality, certainty, and reliance would be undermined by Petitioner's position that an FCC order, even if affirmed under Hobbs Act review, could forever be subject to second-guessing in state and federal courts all across the country. I welcome the Court's questions. So as I understand, if a case, if this case were to come before a district judge, an order before a district judge, and the district judge says this is the most ridiculous opinion I have ever seen in my many years on the bench, however, I have no authority to review it, you don't see a problem with that? Justice Thomas, this is not an issue of agency versus court. This is an issue of which court and when. And I think it's important to emphasize how this... It's still, and do you have the same, you have a collateral attack, you have a disagreement between two parties, they're in court, and the district judge says, under the Hobbs Act, I have no authority, even though I can see this is, this order is ridiculous. That's because the Hobbs Act court has that authority. And if the order is ridiculous, the Hobbs Act court will reverse. And I think it's important to emphasize, page four of the cert reply says, Petitioners ask this court to decide the question presented on the assumption that they had a prior and adequate opportunity for judicial review under the Hobbs Act. So the issue about delay and long-ago orders that were presented in PDR is not presented here. Do you concede that if they didn't have an adequate opportunity, that we would have the problem that Petitioner raises here? Well, we think adequacy is an important safety valve. And Justice Kavanaugh, in his concurrence in PDR network, canvassed a number of concerns with an overly strict reading of exclusivity in this scheme. And we understand that. What about the timing? I mean, I had a little colloquy with Petitioner, and he says that, you know, some of these customers, people affected, would have had no reason to bring this up with the court of appeals within 60 days of the original order. So two responses, Justice Jackson. One is that concern is not presented here, but given the concession that they did have a prior and adequate opportunity, and they just chose not to exercise it. So their view is Hobbs Act exclusivity is optional. They can go either way. Two, in a hypothetical case where that issue was presented, we view that as an adequacy problem. We think Congress addressed potential unfairness, potential due process concerns that Justice Kavanaugh canvassed in his PDR network concurrence, not through limiting the exclusive jurisdiction of the Hobbs Act court, but by creating an adequacy safety valve. And we think that's where the consideration of timing, interests, standing, that's where that would go. Suppose I'm a district judge in New Jersey, and someone shows me a Ninth Circuit opinion on a question of law that I'm considering. And if I conclude that there's no Third Circuit precedent on point and no Supreme Court precedent on point, if I disagree with the Ninth Circuit's interpretation, am I invalidating the Ninth Circuit decision? No, Justice Alito, but that's not the statutory language here. It's not invalidating. It's determining the validity, which is a capacious term, and it wasn't one that was new to the statute. It had just been construed by this court in Yawkus, and it's comfortably understood to mean evaluate the soundness. This court said in Port of Boston it meant review the merits or collaterally redetermine the same issue. And if I could just make one quick point on Port of Boston, Mr. Wessler says, well, that party participated. There were alternative holdings in Port of Boston. The first holding was we think you participated through an agent, but the court was crystal clear. It went on and said, even if not, your interests were implicated, you could have participated, and you chose not to. Having made that choice, you can't now get a collateral redetermination of that same issue in the private payment dispute. And that was a dispute over the meaning of Section 15 of the Shipping Act. It was a statutory construction question. And, Justice Kagan, this kind of idea of is this a non-coercive order, the AmeriFactors issue, came up in Port of Boston also because the party there who was objecting to that order and seeking to get collateral review of it said, this order has no coercive effect. This is just the agency kind of opining on the meaning of the Shipping Act. And what this court said was that's still reviewable under the Hobbs Act because it's a finality consideration. Does it determine rights or obligations, and do legal consequences flow from it? And the court said, yes, they do. When an agency with statutory authority construes a statute within its jurisdiction, that means something. And it cited this court's decision in the Frozen Foods Express case, which was construing the APA declaratory order provision, which is now codified in 54E, which says agencies have authority to terminate controversy or remove uncertainty. And that's what this order did. It was an adjudication, as Justice Gorsuch pointed out, with real legal effect. And they conceded, again, that they could have sought Hobbs Act review. They asked the court to decide the question on that understanding but simply opted not to. You mentioned YACUS in response to Justice Alito. Of course, the other side points out that YACUS had the two sentences, determine the validity and consider the validity. Can you just address that? Sure, Justice Kavanaugh. What Congress did in the Hobbs Act was combine the two sentences. So the first sentence in YACUS said, the Emergency Court of Appeals has exclusive jurisdiction to determine the validity. And then the second sentence said, What Congress did in the Hobbs Act was meld the two sentences into one, and it drew both from that Emergency Price Control Act and also from the Urgent Deficiencies Act. So it takes determine the validity and enjoin from the first and second sentence of YACUS. It takes set aside from the second sentence of YACUS, also from the Urgent Deficiencies Act. It takes suspend only from the Urgent Deficiencies Act. So it's drawing on both these sources, both of which had been interpreted to bar collateral redetermination of the same issue, and it combines them into one. To the extent that my friend is saying that the second sentence is necessary, Congress can provide exclusive jurisdiction to a court without stating the necessary implication. It can, of course, choose to do that if it wants to, that exclusive jurisdiction over A means other courts can't exercise jurisdiction over A. But there's no rule I'm aware of that they have to proceed that way. And I think given the old soil principle, the way that this language was construed in Port of Boston, that determine the validity has the meaning that we and the government are suggesting. YACUS was a very harsh decision rendered in a wartime atmosphere based on particular facts and a particular statute, and you want us to read an awful lot into it. Why should we do that? Justice Alito, you are, of course, correct that YACUS was a World War II statute, but I think it's important to emphasize that the discussion of the wartime exigencies was only in the due process part of the decision. It was not in the statutory construction part of the decision, which is what we're relying on here, and that makes sense. The meaning of statutes don't change depending on whether the country is at war or enjoying peace. The due process holding in YACUS, Congress responded to that by amending the Emergency Price Control Act, not to change the determine the validity language or the exclusivity, but to reopen a window for criminal defendants, civil defendants, to seek review through that exclusive path in the event they were prosecuted or sued. And here, of course, kind of what you described as the harsh result in YACUS is avoided, we believe, by Section 703. 703 was not on the books at the time of YACUS. It was enacted two years later and before the Hobbes Act, and so Congress adopts the Hobbes Act knowing that 703 is there, and we believe it provides a very important safety valve. I'd like to ask you a question about your view of 703. Of course, it's not in the Hobbes Act, but you're interpreting the Hobbes Act in light of it. I understand that. It seems to me we have two choices, basically. One, recognizing that there's an order here, as indeed there is. You can say, well, on the one hand, the Hobbes Act doesn't preclude the district court from saying this is the craziest decision I ever saw because it's not undermining that order in any way. It's just adjudicating the rights of the parties presently before the court. That's one option. The second option is to say, ah, yeah, it's still sort of affecting that order in some way, but no worries if you didn't have an adequate opportunity to challenge it, and that's what you're asking us to do. Are we going to then have a jurisprudence of adequacy? And if so, what does that look like for parties who weren't alive at the time of the administrative proceeding, for parties who wish to present different arguments than was considered by the agency at the time, for parties with different factual circumstances than those that the agency may have had in mind at the time it adjudicated the case before it? Thoughts? Sure, Justice Gorsuch. I'll give you some thoughts. I mean, I think I would emphasize at the outset that that issue is not presented here because adequacy is conceded. I understand that, but you're asking us to open a new door and create a jurisprudence of adequacy, and I just want to understand what it would look like because I think those are our two choices in this case, right, that I outlined at the very beginning of my question. Well, right, you can enforce what we believe to be the proper reading of the Hobbes Act, bracketing that adequacy exists for hard cases. Or simply say... Those are the two choices, but if we buy yours, what does this jurisprudence of adequacy look like? Well, I think there are a couple of data points already in the Court's cases. So PDR Network, admittedly not a definitive holding, but it remanded for consideration of adequacy, and we understand that to be a response to the defendant's argument there, that they would have had no interest in participating at the FCC or seeking Hobbes Act review at the time that that order issued. And the Court viewed that party-specific argument as a possible adequacy issue. We think Port of Boston, although it's not citing 703, is consistent with that because it looked at the specifics of that party and it said you had every interest in participating and you didn't. So what I think it'll wind up doing is saying for the people who are really closely tied at the moment, who could have been there or were there, and kind of collateral estoppel sort of idea. But I don't know what it means much beyond that. Five years out, ten years out, different people, different arguments, different facts. Are we just going to wind up in the same place? Well, Justice Gorsuch, we think Congress was balancing two competing interests here. It was balancing finality, reliance, what this Court called in Corner Post the kind of finality-focused orientation of the Hobbes Act with, we think, fairness and due process concerns. And so Congress is, of course, not required to pursue all its objectives to the ends of the earth. It can balance them, and we think that that's what it did here. But I think what I'd emphasize is even if there was some work to do in future cases, that would all be work to do about the meaning of adequacy. I understand that, but if finality is so important and it turns out that your interpretation doesn't do much to advance finality beyond a few parties presently, what are we here about? Well, I think it would, Justice Gorsuch. Of course, here, again, adequacy is conceded, so the Court doesn't really have to get into that. But you alluded to this yourself. I mean, the FCC operates in a highly, you know, this is a highly regulated industry. You have an amicus brief from some of the major trade associations who are repeat players. They have armies of people who follow what goes on at the FCC. They engage in litigation. Those folks are unlikely to be able to make any kind of adequacy argument, and they're the ones who are often engaged in this litigation. But we think Congress allowed a safety valve. But then we're going to have the corner posts of the world who are going to come in and say, I wasn't alive, I wasn't there, I wasn't in business. And we said the statute of limitations allows them to file their claims. That's got to mean something, right? Well, perhaps so, Your Honor. So I guess in our conception, and the government has a different view on adequacy, which is probably a less capacious view. Substantially, I suspect. Substantially, right? We have more of a, you know, we believe it can be more party specific. But I think it's important to emphasize the implications of petitioner's view, right, is that a party could go to the agency, say, I want to send faxes to online fax services, get a declaratory order, which is like a declaratory judgment. Someone wants guidance. They want a ruling before they act at their own peril. The agency could say, that's right, that's not covered. That could be affirmed by a court of appeals under the Hobbs Act. Then years later, they could be exposed to liability in a federal court, in a state court, for having relied on and sent the faxes that the FCC in a Hobbs Act affirmed order said was permissible. We think that... Sorry, Mr. Pamela, can you speak to petitioner's argument about interpretive rule? Do you agree that this is an interpretive rule? Absolutely not, Justice Jackson. This is an adjudication. It's not a rule of any kind. It's an adjudication. And in 5 U.S.C. 554E, Congress gave agencies authority to issue declaratory orders with like effect as to other orders to terminate a controversy or remove uncertainty. And that's what it did here. The FCC, like many other agencies, based on this court's decision in Chenery 2, in the NLRB versus Bell Aerospace, often announces kind of broad things that look like rules through declaratory orders. It did it here with notice and comment rulemaking. And you consider this to be binding then? Yes, yes, it's binding. It's binding because the FCC was not just deciding a dispute between two particular parties. It was applying the statute to a particular technology, which was these online... So, I mean, suppose that I think that you have some good arguments about why it's not just suits asking for declaratory judgments that fall within the Hobbs Act, but that you at least have to have a suit that's challenging an agency decision with the force of law. But that's a necessity to fall within the Hobbs Act. You think that if that's the rule, you're covered? Absolutely, and I think Port of Boston stands for that proposition. Port of Boston, again, if you look at the relevant part... So, do you think that that should be the rule? Yeah, you don't have to have a declaratory judgment, but the only thing that the Hobbs Act is talking about is challenging challenges to agency rulings with the force of law. The Hobbs Act just excludes anything that doesn't have the force of law. I think that's right. So, the SG cites in their brief a Seventh Circuit decision called the American Trucking Case, which was an ICC report where the ICC was just kind of opining on some things. And what the Seventh Circuit said was, that's not a Hobbs Act reviewable order because it has no legal consequences, it doesn't determine rights or obligations, so it's not a Hobbs Act order, so then there would be no preclusion. But then I take it that you're actually agreeing with Mr. Wessler more than I maybe thought you were, but disagreeing just as to what this ruling does and what it is. In other words, you're saying, yeah, we too agree that if you're talking in the land of interpretations, you're outside the Hobbs Act, but you think that if we limit the Hobbs Act coverage to rulings with the force of law, you think you're in, Mr. Wessler thinks you're out. I want to be careful in how I answer this, so interpretation is being used in multiple different ways here. Of course, agencies always are interpreting statutes, including when they issue legislative rules. They're creatures of statute. Yeah, but we know what binding decisions are and what they're not. And I take Mr. Wessler to be essentially saying the decision that you're challenging is not binding on you, and that's at least one reason why you don't have a good argument under the Hobbs Act. So a couple points, Justice Kagan. We think an order is either in under the Hobbs Act or it's out. It's either reviewable under the Hobbs Act or it's not reviewable, and then this exclusivity discussion we're having is inapplicable. They've conceded in footnote 2 of their reply brief that this is a final order reviewable under the Hobbs Act. So our point is there may be some things agencies do that have absolutely no legal consequences that are not reviewable under the Hobbs Act at all, and then we wouldn't be having this discussion. There's no middle category, though, and this is the point I want to emphasize, of orders that are somehow reviewable under the Hobbs Act. They're final and legally consequential enough to be reviewable under the Hobbs Act, but don't trigger this kind of exclusivity. Thank you, counsel. Justice Thomas. I'm going to try one more time. You mentioned YACUS. YACUS was a criminal trial. They were indicted for violating one of the stabilization laws, and the district court refused to admit evidence. Their arguments allow their arguments that the ruling of the board or commission was improper. What if the district judge said, It's ridiculous. It's the worst thing I've ever seen. Do you find nothing wrong with that, even in the criminal context? Well, I don't think, of course, this is not a criminal case. No, but you're relying on YACUS. Well, there's a due process holding in YACUS that is as you describe. We don't need to rely on the full extent of that YACUS due process holding. We're the defendant. We're the ones wielding an agency order that says that what we did did not violate the statute, and the other side is trying to impose liability on us, so the situation is flipped. The due process concerns, and I completely understand them, and Justice Rutledge wrote about them at length, although he tethered his discussion to the criminal context. None of those issues is applicable here. Justice Alito. The problem with the other side's argument is that unlike corner posts, where the new entity went and has a right to do, to challenge the order completely, they could do a petition for reconsideration, correct, before the commission? Yes, Your Honor. They can file a petition for a declaratory judgment in a circuit court, correct? A declaratory ruling at the agency, right, and they can get Hobbs Act review. Exactly. Yes. So now, if we don't do something like this, people can just ignore agency final orders because they can't be, if they think they got a good argument, they might as well just go ahead and do it, and because the agency ruling will have no effect on them. I think that's right, and the Hobbs Act is somewhat unique, as this court in corner posts described it. It's unique in having the marrying of exclusive and determine the validity, and Congress really wanted finality in this situation, and again, in a case like this one, where the party has conceded that it could have sought judicial review and it said that was a reason why this was a good cert vehicle, their position would basically turn Hobbs Act exclusive review into an option. A party could decide to do it, or they could decide to kind of hang back and wait and see if it mattered to them down there. Until somebody sued them, the government or... Correct. Justice Kagan? Just one question in response to Justice Kagan, force of law, do you think that, or what do you think that means? The best I can do, Justice Kavanaugh, is to use this court's words. I mean, does it determine legal consequences, or do, I'm sorry, determine rights or obligations, or do legal consequences flow from it? So that's what this court in Port of Boston said when the same kind of argument was made, well, this isn't a coercive order, and of course that became the kind of formulation in Bennett v. Speer down the road. It's a lot of debate and application about particular things, whether they have the force of law, isn't there? Well, perhaps, but I think the FCC declaratory orders are quite common. They're done through notice and comment rulemaking. They have, for decades, resulted in Hobbs Act review. This court's decision, the city of Arlington was a declaratory ruling. So agencies can and do kind of broadly applicable things through this font of their authority. Thank you. Justice Jackson? Was the character of this order as interpretive or otherwise addressed by the lower court? It was, yes, this issue was joined, and the Ninth Circuit held it was an adjudication. It did not hold that it was an interpretive rule. It said, this is an adjudication, and that was actually critical. I thought legislative versus interpretive was the fault line. So there's legislative and interpretive is kind of over here, and then there's adjudication over here. And what the Ninth Circuit said was, this is an adjudication. And that was critical to one of its holdings, which was that it applied retroactively because that's what adjudications do. And so that was the holding below that this was an adjudication, not that it was an interpretive rule. And the petitioners never explained in the cert petition or anywhere else why the Ninth Circuit was wrong in what it said, other than to say, well, this was an adjudicatory order kind of interpreting the statute, but that's a different use of the word interpretive because agencies always interpret statutes. Thank you. Thank you, counsel. Mr. Garnieri? Mr. Chief Justice, and may it please the Court, the Hobbs Act precludes collateral attacks on covered agency actions in district court, even in suits between private parties. The Act does so by conferring exclusive jurisdiction on the courts of appeals to determine the validity of covered agency actions. Now, petitioner contends, as you've heard this morning, that determining the validity of an order refers only to entering a declaratory judgment, finding that the order is valid or invalid. That reading of the Act is inconsistent with its plain language, purpose, and history, and with this Court's precedent, particularly the Port of Boston case, which we refer to as Transatlantic, which I still don't think petitioner has provided an adequate explanation for. If you accept petitioner's view, that would mean that a regulated party could obtain a final order from the FCC determining that some particular course of conduct does not violate the TCPA. That order could be upheld on direct review by the Court of Appeals under the Hobbs Act procedures, and a private plaintiff could nonetheless go into district court, sue the regulated party, and ask the district court to disregard the agency's order and impose liability. That is not how the Hobbs Act has ever been understood to work, and we ask this Court to reject that interpretation. I welcome the Court's questions. Does that take you as far as the court in Yakis? I think, at least with respect to the statutory interpretation piece of this, yes, and that's no accident. Congress was clearly drawing on the language that this Court interpreted in Yakis. The Emergency Price Control Act conferred on a special emergency court, exclusive jurisdiction, to determine the validity of price control regulations, and Congress took that language, which was, I think, unique at the time in the Emergency Control Act. Congress took it and brought it into the Hobbs Act in order to accomplish the same purpose that this Court construed the Emergency Price Control Act to have in the Yakis decision. If you take the Hobbs Act to go as far as Yakis, that's an extraordinary thing. I mean, Yakis is not a case people usually want to rely on outside the wartime context, but if that's as far as the Hobbs Act goes, if it goes that far, aren't we going to have real due process questions? I mean, Justice Rutledge raised them. Justice Powell raised them years later in... What was that? In one of them, yeah. You know which one I'm talking about. I do. Let's see. I can even find it for you. Adama or whatever, however you pronounce it. Adama, yeah. Do you really want us to start a 14th Amendment jurisprudence about this? Well, I don't think that there are going to be cognizable due process claims in the mine run of applications of the Hobbs Act. The due process clause of the 14th Amendment does not create any kind of freestanding entitlement to get judicial review of agency action in any court at any time. I think it does generally say when Congress chooses to invest courts with jurisdiction, as a rule, judges interpret the law, and they have a duty to do so independently and not automatically and reflexively have to adopt interpretations that the executive branch chooses and prescribes for them, right? I think, Justice Gorsuch, that might be a little bit different than the due process concern that my friend has articulated. It's what I have, so why don't you address it? Sure, so I think if you're thinking about the way the Hobbs Act generally, the way Congress envisioned this would work, you would get judicial review in the Court of Appeals under the Hobbs Act, and it would be that application of Article III authority that would then be binded. I understand that, but somebody, the fact that one person gets judicial review under the Hobbs Act and makes whatever arguments in our adversarial system that they choose, and then another party, years later, potentially, with very different arguments and different facts, it wasn't around, and you're telling me due process has nothing to say about whether that individual gets to have a judge decide his case. Well, again, I think Congress was talking here about which court gets to do that. It's the Hobbs Act court that gets to exercise Article III authority to determine the validity of the agency. I understand that, and I'm asking you on the due process question. You don't think that raises any due process questions? No, I don't think that you would have a viable due process argument if your contention is that you are not entitled to challenge the validity of the agency's order in an enforcement action. I think you can also get there, I mean, Section 703, I think, confirms that. Section 703 of the APA is the provision that recognizes that Congress can provide for an exclusive review scheme, and there are circumstances in which, when Congress does that, parties are not entitled to judicial review of the agency's action in the enforcement scheme. So Justice Rutledge was wrong, and Justice Powell was wrong to be worried about those concerns? No, of course not. You know, I think they were focused on aspects of the Emergency Price Control Act that aren't necessarily replicated in the Hobbs Act. The other thing that I would point out for the... This is a... It is the plaintiff here, the plaintiff in the private TCPA action, who is seeking to avoid the application of an FCC order, or an order by a component bureau of the FCC. And I think the due process concerns are particularly weak in that context. Yes, but you're asking us to go to a much broader rule based on YACAS, and so we have to consider where that leads. And, anyway, I've taken up enough of your time. Ms. Cornieri, in your brief, you say, the term validity refers, in this context, to having legal strength, force, or authority. That's one. Or to being grounded in sound principles. So suppose I agree with the first half of that, that validity does refer, in this context, to having legal force, but that I don't agree with the second half, that it just refers to, is the ruling grounded in sound principles? That what we're talking about here under the Hobbs Act is a challenge to the legal effect of an agency order, not a sort of hazy challenge to, like, did the agency have sound principles? So what would it mean if I took your definition and chopped it in half and said I only agree with the first part, that the Hobbs Act covers that? Sure, Justice Kagan, if I'm understanding your question, I think this goes back to some of the issues you may have been discussing with my friends earlier about what do we do with this declaratory order and what do you do if you think some particular agency action is not meant to have legal force or effect at all. I agree with the way that Mr. Palmore put it. The Hobbs Act in Section 2342 both specifies the things that are reviewable under the Hobbs Act and provides that that jurisdiction is exclusive and no district court here may determine the validity of the covered agency actions. Now, if you do that analysis and you determine that some particular agency action actually has no legal force or effect and is not the kind of thing specified in the Hobbs Act as an agency action for which you could get direct review in a court of appeals, then you're just out. The exclusivity provision does not come into play because that agency action... So what do you think is just out? What category of rulings is just out? I think there are some things that agencies do that would constitute interpretive rules in the technical meaning of that sense under the APA that have no legal force or effect. We cite a case involving a report issued by the ICC. The FCC commonly issues reports both to the public and to Congress. Those things don't have legal force or effect. They wouldn't satisfy the test for finality. So what I understand Mr. Wessler to be saying, and he'll correct me if I'm wrong, is in this case, notwithstanding that there's an adjudication, it was not an adjudication binding on the parties here. I'm not actually sure what Mr. Wessler would say about that. I think he has tried to characterize this as an interpretive rule, which is simply incorrect. The FCC understands declaratory orders to have their legally binding orders issued by the agency after adjudication. Here, the agency put this out for public. It gave notice. It solicited public comment on this. Declaratory orders under the APA, under 5 U.S.C. 554E, have like effect as other agency orders. These are not the same thing as an informal guidance document that the agency might issue to advise the public of its understanding of some preexisting statutory obligation. I mean, this is a real agency order. Can I understand a little bit more, though? I mean, you said if the agency act has no legal force or effect, then you're just outside the Hobbs Act. So that, in your view, would allow the district court to consider it in the context of an enforcement action. Is that right? Yes, Justice Eisen. But doesn't that seem odd when the language in the exclusive jurisdiction provision says that the court of appeals determines the validity? It seems counterintuitive that you would have the district court determining whether or not this has a legal force and effect and, therefore, the Hobbs Act applies at all. When that goes to validity, even your brief suggested it, and yet we have the language in the statute that says the validity is supposed to be determined by the court of appeals. Well, Justice Jackson, the statute says that the court of appeals shall have exclusive jurisdiction to determine the validity of, and it's followed by an enumerated list. And the enumerated list specifies various statutory authorities exercised by agencies like the FCC. And I don't think it would violate the exclusivity provision for a district court to determine that something the FCC has done in a particular case is not, for example, a final order made reviewable under Section 402 of A of the Communications Act. If the district court decides that, then the district court has effectively decided that this is not the kind of thing the Hobbs Act covers at all. The other point that I would make on this, if I may, is simply that it is open to regulated parties to argue that the FCC has done something by declaratory order that it could only have permissibly done by notice-and-comment rulemaking. But that is the kind of challenge that must be brought within the Hobbs Act framework itself. You could present that argument to the court of appeals, and we've seen cases like that. Thank you, counsel. Justice Thomas? Justice Alito? Let me just ask you another question about Port of Boston. Why can't Port of Boston be read to mean that when a litigant is an actual party to an adjudicatory proceeding and that proceeding produces an order regarding the rights of that specific party, the party must seek review through the Hobbs Act and not by waiting for an enforcement action? Why can't Port of Boston be interpreted that way? That is not the rationale that this court gave for its decision in Port of Boston. The court squarely rested on the exclusivity language in the Hobbs Act. There was a factual dispute there about whether the shipper, Transatlantic, had been represented in the agency proceeding through its agent, which the agent was a member of the shipping association, which was a party to the agency proceeding. This court said, even if you were not a formal party to the proceeding, your interests were at stake and you had an opportunity to participate and you did not. So I don't think the reasoning of the decision can be squared with my friend's suggestion that you could write that off as a case about, you know, an instance in which a party is actually bound by the agency adjudication in the sense of sort of preclusion principles. Did the court in Port of Boston grapple with all the considerations that were laid out in Justice Kavanaugh's concurring opinion in PDR? No, Justice Alito. I will grant you that the analysis in Transatlantic or Port of Boston doesn't seem as troubled by some of the analysis set forth in Justice Kavanaugh's concurring opinion in PDR Network, but the issue was squarely presented there and the court had no difficulty determining that the suit at issue in that case was in effect an effort to get a collateral redetermination of something that had already been settled by the Federal Maritime Commission and for which review under the Hobbs Act was the exclusive mechanism for determining the validity of that agency action. I don't think you have to rest, I think Port of Boston is a strong card for us, but I don't think you have to rest exclusively on that decision either. I mean, this goes back to cases like Venner and Lambert run coal company. There are numerous decisions of this court decided under the predecessor scheme, the Urgent Deficiencies Act, that likewise rejected efforts to get a kind of collateral attack on the agency's order and in suits in which no party was requesting declaratory relief against that order. So I don't think, in addition to Transatlantic, there are other pre-Hobbs Act precedents that just can't be squared with my friend's understanding of how the statute works. Well, let me take you, ask one final question about Yakis. Now, I don't know how big the defendants in Yakis were, but let's suppose they were, you know, this was some mom-and-pop operation that was subject to the price controls that were in effect during World War II, and it was really quite unlikely that an entity in that position was going to be following all the details of what was being, of what was being done in wartime regulation. So they just were unaware of what was happening, and then they find themselves in court being criminally prosecuted for violating the price controls. Would you say there's not a due process concern there? I think the holding of Yakis is that there was no due process violation in that application of the statute, even in the context of a criminal prosecution. Obviously, we are one step removed from that here. This is a civil enforcement action, not a criminal prosecution. Now, I will say, the respondent in this case has suggested that today, if a similar issue arose, you have Section 703 as a safety valve. Now, in PDR Network, we took the position that in Section 703, when the statute refers to an adequate prior opportunity for review under one of these exclusive schemes, adequacy was supposed to be judged at a level of generality. The question is whether the statutory scheme provided an adequate opportunity to the regulated community in general, not the specific party in that case. We haven't had occasion to revisit that position here because Petitioner has asked the court to decide this case on the premise that Petitioner already had a prior and adequate opportunity to seek review under the Hobbs Act. But what I want to stress is if you disagree with us about how to read the adequacy language in Section 703, that could be something the court could address in an appropriate future case. It is not a reason to adopt Petitioner's understanding of the Hobbs Act. All right, thank you. Justice Sotomayor? Justice Kagan? Justice Gorsuch? Just one quick question about the Port of Boston. You emphasized that the transatlantic there wasn't a party to the administrative proceedings, right? Yes, although I think there was a factual dispute in that case about the extent to which it should be. Didn't the court expressly rely on the fact that transatlantic had been represented before the commission? No, Your Honor. I think if you look at the final paragraph... It was, in fact, represented before the commission and has previously made numerous claims to party status. In the petition for reconsideration filed with the commission, it asserted that it had been represented in the administrative evidentiary proceedings through its agent. Yes, Justice Gorsuch, but I think... That's part of the holding, the court, right? I entirely agree. The court was engaging in two alternative analyses, alternative holdings, I think I heard Mr. Palmari use that phrase earlier. I entirely agree with you that the court was saying that transatlantic was trying to have it both ways. They had claimed party status before, now they're disclaiming it. If you look at the next paragraph... I'm looking at it. There is a clause that says even if transatlantic was not a formal party. It does say that. The exclusivity analysis applies the same way. It says that because it had every opportunity to participate before the commission and not in the abstract in the sense that it did just discussed in the prior paragraph. It's not that somebody could have come in. It's that these people did come in. That was bound up in the court's analysis, wasn't it? Yeah, I think we would say the same thing about a party in McLaughlin's case. McLaughlin had every opportunity to participate in the agency proceedings and chose not to. And I think the analysis would look the same way. Mr. Cavanaugh? Justice Barrett? Justice Jackson? No. Thank you, counsel. Rebuttal, Mr. Wessler? Thank you. Just a few brief points in rebuttal. The Hobbs Act's grant of exclusive jurisdiction simply means that the district court may not entertain a petition for review of an agency action subject to the Act. Nobody questions that the Hobbs Act's grant of that kind of jurisdiction is designed to create a streamlined process for funneling pre-enforcement facial challenges to agency actions into the courts of appeals. And, of course, no matter how the court resolves this case, those challenges will continue. But I think what's at issue here is really whether the Hobbs Act and the text of that statute this court ought to read it in a way that expands and extends the sweep of the Hobbs Act to cover any opportunity a district court might have in a garden-variety civil litigation case to even consider or evaluate the reasoning of an agency interpretation. I think that can't be right, as we've explained, based on both text, structure, and history of the statute. I think, to your point, Justice Alito, yes, Port of Boston, I think, distinctly different from what we've got going on here because it involved parties who, Justice Gorsuch, as you noted, were themselves directly involved in the agency proceeding. That isn't the kind of proceeding that we have here in which the FCC has issued a declaratory order that only one party sought. So, in this case, you have AmeriFactors, a company, seeking a declaratory order. There are no other parties, nor could there be for purposes of this agency action. And I think that's significant because the only opportunity that a party in the plaintiff's shoes in this case would have should they wanted to try to challenge that interpretation would be to do what another party did, which is to file a petition for reconsideration in front of the agency. That is an empty promise of judicial review as Justice Kavanaugh, you pointed out, in your concurrence in PDR Network because that petition for reconsideration of the FCC's AmeriFactors order has been pending for more than five years. I think what you heard from my friends on the other side was perhaps a backing away of a view that the Hobbs Act covers interpretive orders along with legislative orders. If that's correct, I would require reversal here because the Ninth Circuit's rule from which we have taken an appeal is that the Hobbs Act covers both interpretive and legislative orders. I note that the government on page 31 of its brief defends that proposition despite what you heard today. It has taken the position that there is no exception under the Hobbs Act for interpretive rules. It covers both kinds of rules. An adjudication can still be an interpretive rule as courts have routinely held. Adjudications are simply an alternative path to a regulation or a rulemaking that an agency can take but it does not affect a distinction between agency action that carries the force of law versus agency action that does not. And I will just point out that in PDR Network, there the FCC issued a rule through notice and comment but on remand, the Fourth Circuit held that it was interpretive and therefore not subject to the FCC. This Court should make clear once and for all that the Hobbs Act does not require a district court to follow an agency's interpretation of a statute no matter how wrong. Thank you. Thank you, Counsel. The case is submitted.